**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| RIGHTHAVEN LLC,             ) | Case No. 2:10-CV-3075-RMG-JDA |
|                        ) | |
| Plaintiff and Counter-Defendant,   ) | **PLAINTIFF'S OPPOSITION TO** |
|                        ) | **DEFENDANT'S MOTION TO** |
| v.                      ) | **DISMISS FOR LACK OF SUBJECT** |
|                        ) | **MATTER JURISDICTION** |
| DANA EISER,               ) | |
|                        ) | |
| Defendant and Counter-Plaintiff.   ) | |
|                        ) | |

Righthaven LLC ("Righthaven") hereby opposes defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction , Docs. # 60, 61 , pursuant to FRCP 12(b)(1) based upon the following Memorandum of Points and Authorities and  the pleadings and documents on file in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. SUMMARY OF NATURE OF CASE**

Righthaven filed a single count complaint for copyright infringement on December 2, 2010.  (Doc. # 1).  Righthaven filed an Amended Complaint on April 7, 2011, which is the pleading to which this motion is addressed. (Doc. # 36.) In her Second Amended Answer and Counterclaims, defendant denies ( for the first time) that she owns the website or has control over the blog which it maintains. (Doc # 53, Para 55).  Defendant now moves for dismissal for lack of subject matter jurisdiction based upon allegations that the assignment of the subject copyright is invalid. As set forth below, defendant's motion is based upon another  Righthaven agreement which courts in the District of Nevada have reviewed  and not the one applicable here.

**II. STATEMENT OF FACTS**

1

In the Amended Complaint, Righthaven asserts that it is the owner of the copyrighted literary work entitled "A Letter to the Tea Partyers" (the "Work"), which was originally published on September 23, 2010 by the *Denver Post*. (Id. ¶¶ 9-10, 17-18, Ex. 1.) Righthaven asserts it was assigned all rights, title and ownership in and to the Work, along with the right to sue for past, present and future infringements by MediaNews Group ("MNG"), publisher of *The Denver Post*. (Id. ¶ 10.) On November 19, 2010, Righthaven applied for the copyright in and to the Work with the United States Copyright Office. (Id. ¶ 19, Ex. 3.) Righthaven contends the Defendant controls the Internet domain and content displayed at lowcountry912.wordpress.com (the "Website"). (Id. at ¶ 5-7) Righthaven further asserts that on or about September 23, 2010, and after publication by *The Denver Post*, defendant posted a unauthorized reproduction of the entire Work on the Website (the "Infringement"). ( Id. at ¶¶ 11-12, 20, 28-32, Ex. 2.) In its Amended LR 26.01 Answers to Interrogatories ( Doc. # 67 ) Righthaven asserts that there is a Copyright Alliance Agreement in effect between Righthaven and MediaNews Group concerning the subject matter of this litigation.

Defendant contends that the complaint here should be stricken because the validity of the assignment between Righthaven and Stephens Media LLC of content originally appearing in the *Las Vegas Review-Journal* has been called into question. Doc. #60 at Para. 7-16. Defendant contends that " the terms of the assignments are governed by Righthaven's so-called "Strategic Alliance Agreement" ("SAA") it has with its clients. . . . Righthaven's SAA with MediaNews Group has terms that are legally indistinguishable from the Stephens Media SAA." Doc # 60 at P. 7. However in a footnote defendant admits that she has not actually seen the agreement with MediaNews Group. Id at p. 7, n.3. In a supplemental filing, defendant attached the Copyright Alliance Agreement with MediaNews Group but then does not assert how this agreement invalidates the assignment. Doc # 61, Exhibit A. Instead, defendant reserved analysis for its reply.

2

Doc # 61 at p. 1.  Finally, defendant filed yet another supplement to this motion,  Doc # 64,  asking the Court to withhold action on two pending motions to dismiss including this one until Righthaven produces certain documents in <u>Righthaven v. Democratic Underground</u> related to the filing in that action.  As set forth below,  Righthaven contends that this motion is not based on the assignment at issue here and contains much material that has not been shown to be relevant.

### III. LEGAL ARGUMENT

**A. The motion should be denied for failure to comply with LR 7.05**

LR 7.05 requires that every motion contain "a concise statement of facts that pertain to the matter before the court" and "an argument relating to the matter before the court".  L.R.7.05 (A) (2) & (3). Defendant has not provided either.  In the subject motion, defendant alleges "the terms of the assignments are governed by Righthaven's so-called "Strategic Alliance Agreement" ("SAA") it has with its clients."  The Memorandum contained in the motion is directed at the deficiencies in the SAA. See Doc. #60 at p 7-16. The Memorandum raises the dismissal of Righthaven's claims in cases in other jurisdictions in which the SAA was in issue. See  Doc 60 at p. 24 and Exhibits E, F, G, and H.  Defendant also alleges that Righthaven's SAA with MediaNews Group has terms that are legally indistinguishable from the Stephens Media SAA. However, when defendant made that statement, counsel had not seen the MediaNews Group agreement  but knew it was a different agreement , other than the one on which the motion was based. (Doc. # 60 at 7 n.3.) The next day, defendant attempted to supplement the motion by submitting the Copyright Alliance Agreement and nothing else.

Righthaven contends that the motion fails to satisfy either section of L.R. 7.05 and should be dismissed for that reason. There was no legitimate reason given or imaginable  for filing a motion to dismiss based upon incomplete facts and irrelevant legal arguments. Defendant's counsel had no good faith basis to believe that the two agreements were substantially the same when he  filed the motion and then did nothing to satisfy the requirements of the rule when the Copyright Alliance Agreement was in counsel's possession. Counsel never submitted a Supplemental Memorandum outlining the provisions of the CAA and how they are the basis to

invalidate an otherwise valid copyright assignment. There was no comparison of the provisions of the Copyright Alliance agreement with the Strategic Alliance Agreement upon which defendant's entire motion and legal argument relied.  The motion was not reasonably based in fact as required under Federal Rule of Civil Procedure 11 at the time of filing given its contents. *See* FED. R. CIV. P. 1(b)(3) . According, defendant has failed to satisfy the most rudimentary requirements for a motion , i.e. a statement of the relevant facts and law and the court should not expend it's time to doing so.

**B. The complaint is facially sufficient for subject matter jurisdiction**

If the Court disregards defendant's failure to place relevant issues and argument in her moving papers, this motion should  be considered only as a facial attack on Righthaven's standing that is limited to the allegations contained in the Amended Complaint. See Gould Elect. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); MCG, Inc. v. Great Western Energy Corp., 896 F.2d 170, 176 (5th Cir. 1990); Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1995).  If the Court considers the motion  other than under these circumstances, Righthaven will be placed at a disadvantage by  being forced to anticipate arguments that have not yet been raised by the moving party.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 894-95 (1990) (recognizing the court has discretion to disregard late-filed factual matters); Ojo v. Farmers Group, Inc., 565 F.3d 1175, 1186 n. 12 (9th Cir. 2009); Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (the "district court need not consider arguments raised for the first time in a reply brief"); Beaird v. Seagate Tech., Inc., 145 F. 3d 1159, 1164-65 (10th Cir. 1998).

 A Rule 12(b) (1) motion that does not consider extrinsic evidence is commonly referred to as a facial attack. Warren v. Fox Family Worldwide, Inc. 328 F.3d 1136, 1139 (9th Cir. 2003); Morrison v. Amway Corp., 323 F.3d 920, 924 n. 5 (11th Cir. 2003.  A facial attack challenges the sufficiency of the complaint's allegations that federal subject matter has been invoked. Montez v. Department of Navy, 392 F.3d 147, 149-50 (5th Cir. 2004); Warren, supra, 328 F.3d at 1139; Morrison, supra,  323 F.3d at 924 n. 5.  Under a facial attack, a court must accept the allegations of the complaint as true. See Gould Elect. Inc., supra,  220 F.3d at 176; MCG, Inc., supra,  896 F.2d at 176; Valdez, supra,  837 F. Supp. at 1067.  In order to survive a Rule 12(b)

(1) facial attack, the complaint must contain "sufficient jurisdictional facts to state a claim which is plausible on its face." Bushnell, Inc. v. Brunton Co., 659 F. Supp. 2d 1150, 1157 (D. Kan. 2009). Righthaven's Amended Complaint clearly meets these requirements.

"Federal district courts have subject-matter jurisdiction over copyright infringement actions based on 28 U.S.C. §§ 1331 and 1338 . . . ." Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237 (2010. A plaintiff asserting a copyright infringement claim "'must establish that he or she owns the copyrighted creation, and the defendant copied it.'" NCR Corp. v. Korala Assocs., Ltd., 512 F.3d 807, 814 (6th Cir. 2008)( citation omitted). See also Grubb v. KMS Patriots, L.P., 88 F.3d 1,3,5 (1st Cir. 1996); Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1065 (4th Cir. 1988).

Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement. In Silvers v. Sony Pictures Entertainment, 402 F.3d 881 (9th Cir. 2005), the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. Id. at 889-90. See ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991)( right to sue for past infringement when both the copyright and the accrued claims were purchased). Section 106 of the Act, in turn, defines the exclusive rights that can be held in a copyright , e.g., the right to reproduce, to prepare derivative works, and to distribute copies.

Righthaven's Amended Complaint asserts its ownership in and to the copyright to the Work, as well as any and all rights to seek redress for past, present and future infringements, both accrued and unaccrued, in and to the Work. Doc. # 36 ¶ 9-10. The foregoing allegations not only satisfy Righthaven's obligation to plead ownership of the Work, but the allegations also establishes the company's right to sue for past, present and future infringements as required by Silvers. Id. The Amended Complaint additionally sets forth Defendant's acts constituting the Infringement. (Id. at ¶¶ 11-12, 20, 28-32, Ex. 2.) Accordingly, Righthaven's Amended Complaint contains more than adequate facts to invoke subject matter jurisdiction. Therefore, to

the extent it is construed as a facial attack, defendant's Rule 12(b) (1) Motion must be denied in view of the Amended Complaint's allegations.

## C.  Substantive analysis of the assignment must await discovery

Righthaven asserts that the motion should be denied for another reason. Defendant's attempt to invalidate the assignment of the subject copyright based upon the provisions of the CAA for which no arguments have been made necessarily involves a substantive analysis of the claims and defenses in this case.  For example, defendant asserts that Mike Rosen not MediaNews Group is the owner of the copyright based upon various allegations and other Rosen works.  Doc. # 60 at p. 41- 42.   Even if this issue were properly presented by defendant, it is not amenable to disposition under Rule 12(b)(1).  Rather, it is inexorably intertwined with the merits and should be considered on summary judgment after the parties have engaged in discovery.

Courts generally find that the question of jurisdiction and the merits of an action are intertwined where, as here, the same statute provides the basis for both the subject matter of the federal court and the plaintiff's substantive claim for relief.  See Warren, supra, 328 F.3d at 1139; Morrison, supra, 323 F.3d at 926 (challenges to "employer" status under federal employment discrimination statutes); Gould Elect. Inc., supra, 220 F.3d at 178 (factual determination implicating subject matter jurisdiction under the Federal Tort Claims Act.  A court should not resolve genuinely disputed facts where the question of jurisdiction is dependent upon the resolution of factual issues going to the merits. Holt, 46 F.3d at 1003; Morrison, 323 F.3d at 925; Clark, 798 F.2d at 742.

Judge Navarro of the United States District Court for the District of Nevada took just such an approach when presented with the same standing arguments under a Rule 12(b)(1) motion. Righthaven LLC v. Virginia Citizens Defense League, Inc., Case No. 2:10-cv-01683-GMN-PAL (D. Nev. Jun. 23, 2011) (Doc. # 26).  Specifically Judge Navarro reasoned:

> [I]f discovery reveals that the assignment of the copyright does not convey
> the appropriate rights to sue for the infringement in this case – including
> whether or not the right to sue for past infringements was assigned – this
> could be raised in a motion for summary judgment.

(Id. at 13:10-13.)

When subject matter jurisdiction arguments are directed to or are inextricably intertwined with the merits of the claims at issue, the matter should be decided on summary judgment – not pursuant to Rule 12(b)(1). See <u>Kerns v. United States</u>, 585 F.3d 187, 193 (4th Cir. 2009). <u>Safe Air for Everyone</u>, 373 F.3d at 1049.

Defendant asserts that another basis for lack of jurisdiction is that the assignment assigns the bare right to sue. Doc. # 60 at p. 41. Id. Defendant's contention that Righthaven licenses back rights to the assignor does not render the Assignment per se invalid. Parties routinely enter into complex agreements transferring intellectual property rights. It is well established that such transfers are not invalid simply because the original owner retains some rights. See, e.g., <u>Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc</u>., 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing <u>Premier Dental Prods. Co. v. Darby Dental Supply Co</u>., 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment agreement do not invalidate it")); <u>Int'l Armament Corp. v. Matra Manurhin Int'l., Inc</u>., 630 F. Supp. 741, 746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses. Such limitations on an assignment do not invalidate or make it a sham, however.")

In <u>Rawlings v. Nat'l Molasses Co</u>., 394 F.2d 645, 648 (9th Cir. 1968), the Ninth Circuit more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper:

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant. We assume that to be true. Defendants urge that the transaction was a sham. The documents were in fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable. If not, then the purpose underlying their execution is of no concern to the defendants.

Thus, the court found that the purpose behind a business transaction does not have any bearing on the issue of standing.

Patent cases, such as Rawlings, are highly instructive here.  As the Ninth Circuit held in Silvers v. Sony Pictures Entertainment,  supra,  courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights.  402 F.3d at 888; see also Davis v. Blige, 505 F.3d 90, 104 (2nd Cir. 2007) ("Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").  In an analogous patent case, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid.  SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp., 1994 WL 374529 (Fed. Cir. Jul. 14, 1994).  There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement.  The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the conclusion of the litigation, a much greater restriction than that present in this case.  Id. at *6.  The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing."  Id.  The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation.  In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

Id.  Thus, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit.  Id. at *6-7.  If this Court were to follow this reasoning as Silvers holds it should, Righthaven is

8

the sole current owner of the copyright and not MNG despite Defendant's arguments to the contrary.

In Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870 (Fed. Cir. 1991), Vaupel, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." Id. at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." Id. Therefore, patent law which is the guidepost for interpretation of copyright principles has regarded the reservation of rights as not affecting the right of the assignee to recover for infringement.

Although defendant asserts that that federal courts look to state law to resolve copyright-related contractual issues, defendant fails to recognize that Nevada law expressly governs the interpretation of the CAA. Doc. # 61 at 8 § 19 states: "This Agreement . . . shall be interpreted in accordance with the laws of the State of Nevada without regard to its conflict of laws principals." Thus, Defendant's rush to challenge subject matter jurisdiction has resulted in advancing a completely irrelevant state law contract-based analysis.

Based upon the above , Righthaven asserts that this motion is not  the appropriate means to decide the issues defendant has attempted (incorrectly) to raise.  However, if the court intends to consider the merits of defendant's argument about  the copy right ownership and assignment of rights, Righthaven respectfully request the opportunity to file a reply.

**D. Whether the assignment violates South Carolina public policy is  another question of fact.**

Defendant dedicates a significant portion of this motion asserting that the Assignment is an illegal contingency fee agreement being enforced by Righthaven who is not a law firm. Doc. #

60 at p. 29-37. This argument goes to the merits of the claims and defenses in this case and is properly decided on summary judgment – not under a Rule 12(b)(1) analysis. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1049 (9th Cir. 2004); United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999); Bennett v. United States, 102 F.3d 486, 488 (11th Cir. 1996); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995); Clark v. Tarrant County, Tex., 798 F.2d 736, 742 (5th Cir. 1986).   Again, defendant uses the vehicle of a motion to dismiss to argue legal conclusions without the correct factual basis, the CAA. Furthermore, defendant did not argue the applicability of the cases it cites to the allegations of the complaint.

In various cases cited by defendant, it has been held that  a bare legal claim to recovery cannot be validly assigned.  See e.g., Nelson v. Smith, 154 P.2d 634, 639-40 (Utah 1944).  Often these circumstances involve collection agencies seeking to recover debt on behalf of a client while retaining a percentage of any recovered proceeds. Id. These situations also frequently include actions that either come dangerously close to or actually constitute the unauthorized practice of law. Id.  These cases, however, are completely inapplicable.

The Amended Complaint alleges that Righthaven has been assigned all right, title and interest in and to the Work along with the right to seek redress for past, present and future infringements. (Doc. # 36 ¶ 10.) An assignment transfers all rights, title and interest in and to the assigned property.  See Key Maps, Inc. v. Pruitt, 470 F. Supp. 33, 38 (S.D. Tex. 1978); see also Pressley's Estate v. Russen, 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Thus, the fundamental difference between the facts presented to this Court and those contained in the numerous cases cited by Defendant is that Righthaven has been conveyed ownership of the intangible property (the Work) along with the right to sue for infringement of the exclusive rights conferred under the Copyright Act. Therefore, Righthaven is clearly unlike the collection agency at issue in Nelson where the court expressly noted that when conferred the right to collect a debt "the collection agency has

10

absolutely no interest, either legal or beneficial, in the claim." <u>Nelson</u>, supra,  154 P.2d at 639-40.  The Assignment in this case  survives at least a Rule 12(b)(1) facial attack because copyright ownership can be assigned and sued upon, whether for a past, present or future infringement claim if the assignment so provides.  Silvers, supra,  402 F.3d at 885, 890.

        Righthaven has acknowledged that it shares the proceeds of any recovery related to copyright litigation  with MNG. Doc # 67. This provision does not render the Assignment unlawful nor does it constitute an illicit contingency fee agreement.  The U.S. Supreme Court has held  that an assignee of an accrued cause of action has standing to bring suit in his or her own name even if there is a promise to remit a portion of any proceeds recovered to the assignor. <u>Sprint Communications Co., L.P. v. APCC Services, Inc</u>., 554 U.S. 269, 275 (2008)  See also <u>In re Brooms</u>, 447 B.R. 258, 265 (9th Cir. 2011) ( "for collection purposes, the assignee who holds legal title to the debt according to substantive law is the real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action."). Therefore, the Court should reject the suggestion , not supported by reference to the Amended Complaint or CAA that the Assignment is an illegal contingency fee agreement .

        Finally, what constitutes the unauthorized practice of law is within the jurisdiction of the South Carolina Supreme Court. Defendant has filed a Petition for Original Jurisdiction. Doc 60, Exh. W.  As the South Carolina Supreme Court held in <u>Robert v. LaConey</u>, 375 S.C. 97 ( 2007):

    "The generally understood definition of the practice of law embraces the
    preparation of pleadings, and other papers incident to actions and special
    proceedings, and the management of such actions and proceedings on behalf of
    clients before judges and courts." "The practice of law 'is not confined to litigation,
    but extends to activities in other fields which entail specialized legal knowledge and
    ability.' Other than these general statements, there is no comprehensive definition of
    the practice of law. Rather, **what constitutes the practice of law must be decided
    on the facts and in the context of each individual case**. Id at 103. ( Citations
    omitted) ( emphasis added)
 The matter was initially referred to a Special Referee to take evidence and issue a report

containing proposed findings of fact and recommendations to the Court. Id at 100.The facts on

which the  Court relied included the following: respondent prepared pleadings, request for

11

production of documents, the notice of Motion and Motion for Supplementary Proceedings, the

Execution Against Judgment and had it signed by the Clerk of the Circuit Court directing the

Sheriff to satisfy the judgment;  appeared at a hearing before the Equity Division on behalf of the

judgment holder; sent letters to  the debtor  that were designed to induce him to pay the

judgment, some of which contained legal opinions formulated by Respondent. Id at 104. The

Court held that this was the type of strategic activity which entailed "specialized legal knowledge

and ability." Id. Respondent represented that he was acting as "Plaintiff's Attorneys." Id.  The

Court concluded that based on the foregoing  actions, respondent was engaged in the

unauthorized practice of law. Id at 106. The finding of the  South Carolina Supreme Court in

Roberts v. LaConey, 650 S.E.2d 474 (S.C. 2007) on which defendant relies was based upon an

examination of all of the facts determined after a hearing, not on a motion to dismiss. The

contention that the CAA violates South Carolina public policy as constituting  the unauthorized

practice of law  on its face must await a factual determination. Therefore, this court should refuse

to entertain any application on this issue.

**F. The second supplemental filing**

Defendant filed a second  supplemental filing several days after the initial motion. Doc.

# 64.  This filing relates to hearings in the District Court of Nevada  case,  Righthaven v.

Democratic Underground,  concerning disclosure of  the Strategic Alliance Agreement. That

agreement is not at issue here. In that supplement,  defendant requested that the Court withhold

ruling on the cross motions to dismiss until Righthaven has provided this Court with the transcript of

the July 14, 2011 sanctions hearing in Righthaven v. Democratic Underground and any written order

in connection with that hearing. Id at p.5.  Righthaven intends to comply with the court order and will

provide the court with 1) the order to show cause; (2) a complete copy of the transcript of the July 14,

2011, hearing; and (3) any written order subsequently issued by Judge Hunt connected with these matters.

However, Righthaven contends that the Court should decide this motion based on the arguments and evidence placed at issue through the defendant's initial submission unless required to address issues raised in the non-moving party's response. Defendant failed to provide either argument relevant to the CAA or any substantive reference to the CAA in her moving papers. (Doc. # 60.) Defendant's supplemental filing merely attached a copy of the CAA without any supporting argument concerning its contents. (Doc. # 61.). The second supplemental filing again does not refer to the CAA or explain why the proceedings in Nevada relate to a different agreement that need not be disclosed in South Carolina.

## G.   Any dismissal should be without prejudice

If the Court were to conclude that it lacks subject matter jurisdiction despite the numerous procedural shortcomings of defendant's Motion, Righthaven's Amended Complaint should be dismissed without prejudice. See FED. R. CIV. P. 41(b) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits); Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir. 2006) (A dismissal for lack of subject matter jurisdiction must be without prejudice because "the court, having determined it lacks jurisdiction over the action is incapable of reaching a disposition on the merits of the underlying claims.") (emphasis in original); Exploration Co. v. Tenneco Oil Co., 857 F.2d 1388, 1392 (10th Cir.1988) ("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits ...."); Martinez v. Richardson, 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is a fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication on the merits and therefore dismissal of the . . . claim must be without prejudice."); see also Stalley v. Orlando Reg. Healthcare Systems, Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); Hernandez v. Conriv Realty

13

Assoc., 182 F.3d 121, 123-24 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").

## CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court deny defendant's motion as procedurally improper because it fails to contain relevant arguments based on the contract at issue in this case – the CAA.  Defendant's supplemental filing did nothing to correct this glaring procedural defect.  Alternatively, should the Court entertain Defendant's defective submission, it should construe the Motion as a facial attack upon the Amended Complaint under Rule 12(b)(1).  Under such an analysis, Righthaven's Amended Complaint unquestionably contains sufficient allegations to vest this Court with subject matter jurisdiction.

To the extent the Court looks  beyond a facial analysis, Righthaven contends that the issues raised by the defective filing are not the proper subject of a motion to dismiss. They relate to substantive matters ( who owns the copyright and whether the assignment is valid )  which are inextricably related to the merits which should be decided   on summary judgment – not under a Rule 12(b)(1) analysis.

Defendant's  arguments directed toward the invalidity of the Assignment as a matter of public policy or as otherwise constituting the unauthorized practice of law also raise factual issues which are not appropriate for the Court to consider on this motion.   The contract law of South Carolina plays no role in determining the validity of an assignment because the CAA expressly calls for the application of Nevada law. The South Carolina Supreme Court has exclusive jurisdiction as to what constitutes the unauthorized practice of law and Righthaven has filed a Petition asking it to take original jurisdiction over the issue.

In summary, defendant's Motion should be denied for these reasons.  Should the Court disagree with this assertion, Righthaven maintains that any dismissed for lack of subject matter jurisdiction must be without prejudice.

Respectfully submitted,

 /s/ Edward A. Bertele
Edward A. Bertele, Esq.
Federal ID. 10293
1812 Pierce Street
Charleston, South Carolina 29492
Ph:   843-471-2082
Fax: 843-471-2082
ebertele@msn.com
Attorney for Righthaven LLC

August 8, 2011