IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| RIGHTHAVEN  LLC | ) | Civil Action No: 2:10-cv-03075-RMG-JDA |
| Plaintiff | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| | ) | |
| DANA EISER | ) | |
| Defendant | ) | PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED ANSWER AND COUNTERCLAIMS |

Plaintiff, Righthaven LLC (Righthaven) moves to dismiss the Second Amended Answer and Counterclaims, Doc. # 53, pursuant to FRCP 8(a)  and  to dismiss various of the counterclaims contained therein, some with prejudice, pursuant to FRCP 12 (b)(6). Righthaven relies upon the Memorandum of Law set forth below and pleadings previously filed in this matter.

## SUMMARY OF CASE

In response to  a single count complaint for copyright infringement, Doc. # 1, defendant filed an answer, Doc. # 7,  and then an Amended Answer with six Counterclaims. Doc. #  22. Righthaven moved to dismiss the counterclaims. Doc. # 23. The court deferred action on that motion until Eiser responded to Righthaven's Amended Complaint. Doc. # 35. Eiser then moved to dismiss the Amended Complaint. Doc. # 37 . Pursuant to the Second Amended Scheduling Order, Doc. # 27, Eiser filed a Second Amended Answer and twenty three Counterclaims ( SAAC). Doc. # 53. Eiser filed a subsequent motion to dismiss on different grounds, Doc. # 60, and filed an Amended Response to Righthaven motion to dismiss. Doc. # 62. Righthaven now moves for dismissal of  the Second Amended Answer and Counterclaims for the reasons set forth below.

## BASIS FOR THIS MOTION

Righthaven's previous motion to dismiss the six counterclaims in the Amended Answer and Counterclaims asserts that Eiser has included redundant and repetitive material in her pleadings, Doc. # 23 at page 6, 9; and that Eiser failed to state sufficient facts on which to base a cause of action for certain counterclaims. Id. at pages 9-17. In an Amended Response to the motion to dismiss, Eiser admits that she withdrew three of the previous counterclaims, declaratory judgment, barratry, no good faith basis for complaint. Doc. # 62 at page 9. Therefore, the pending motion to dismiss is still applicable to the three counterclaims that were repeated in the SAAC, i.e., civil conspiracy, abuse of process and violation of South Carolina Unfair Trade Practices Act. Righthaven's earlier motion to dismiss is hereby incorporated by reference.

Righthaven contends that Eiser's pattern of redundant and repetitive pleading and failure to allege sufficient facts to state a claim has continued in the SAAC and should be penalized for failure to comply with FRCP 8(a) and 12(b)(6).

## STATEMENT OF FACTS RELEVANT TO MOTION

The Amended Complaint alleges that Eiser committed copyright infringement by copying and displaying a copy of a literary work, " A Letter to the Tea Partyers" on a website accessed through the Domain name <lowcountry912.wordpress.com> (the "Domain"). Doc.# 36, Para. 11-12. Righthaven alleges that Eiser is, and has been owner of this domain and has maintained administrative or editorial control of the Domain. Id. at para. 5,6 and 7.

The SAAC consists of 1003 numbered paragraphs in 119 pages containing thirty three affirmative defenses and twenty three counterclaims. Every one of the thirty three separate

defenses contains multiple paragraphs explaining the defense. The SAAC asserts an affirmative

defense (champerty) for which Eiser admits this is not legal authority. Paragraphs 280-282.

Every one of the twenty three counterclaims contains legal citations and there are over seventy

paragraphs  containing  case law citations in the entire SAAC.[1]  Many paragraphs contain

statements unnecessary to answering the allegations of the complaint or asserting an affirmative

defense .[2] Many of the paragraphs contain allegations or statements that are irrelevant or

polemical or are intended to be "evidential" of a claim. [3]  The SAAC contains numerous

references to other Righthaven cases. Paragraphs 64, 94, 108, 205, 206, 595, 596, 711, 719, 788,

794, 819, 915, 916, 951.  The SAAC describes  Righthaven's conduct as  a  massive fraud",

Paragraph 98; "worse than a mentally unbalanced person", Paragraph 977; a "reign of terror",

Paragraph 527;  "sham proceedings" , Paragraph 694; "atrocious",  Paragraph 802;  that

everything about it violates public policy, Paragraph 275; that its CEO Steven Gibson has an "ill

regulated mind", Paragraph 720; and that one of its in house attorneys is "engaged in the

unauthorized practice of law in Nevada",  Paragraph 184, that its former South Carolina attorney

conspired to enhance settlements. Paragraph 212.   The SAAC mentions the median salary of a

Las Vegas attorney, Paragraph 945,  quotes the New York Times, Paragraph 103,  the Las Vegas

Sun,  Paragraph 189,  and the movie "Scarface".  Paragraph 795. Righthaven contends that this

pleading on its face violates FRCP 8(a), see below, but also directs the court to the substantive

---

[1] See Paragraphs 47, 89, 90, 127, 140, 150, 171, 172, 224, 229, 234, 248, 267, 280, 281, 285, 303, 315, 332, 348, 349, 351, 384, 385, 386, 414, 419, 467, 490, 509, 512, 513, 514, 522, 523, 533, 534, 535, 566, 571, 610, 633, 644, 672, 689, 704, 705, 730, 778, 786, 811, 814, 822, 827, 845, 865, 866, 885, 886, 887, 888, 891, 905, 906, 907, 908, 909, 950, 962, 967, 981, 976.

[2] See Paragraphs 1-8,79-81, 82-87, 91-112,114-124,128-137,139-148,150-169,171-222, 225-227, 229-232, 234-246, 248-265, 267-272, 274-276, 278-293, 295, 297-301, 303-313, 315-322, 324-330, 332-345, 347-370, 376-382, 384-401,403-417, 419-435, 439-453, 455-465, 467-478,481-483,485-488,491-498,501-506,509-514,533 539, 571, 581-585, 611, 627, 633-634, 645-647, 730-733, 738-742, 778-779, 844 846, 883, 886, 911, 975, 982.

[3] See Paragraphs  42-47, 56-60, 525-528, 595-596, 664-667, 690-693, 709-723, 759, 762-767, 788, 789-797, 800, 802, 806, 815, 820, 821, 823, 827, 889, 900, 910, 912, 913, 914, 915, 917-918, 942-964.

allegations.

The SAAC denies (for the first time) that Eiser owns the website or has control over the blog which it maintains. Doc # 53, Para 55. She denies she made a copy of the literary work or posted it on the website and alleges that the not for profit corporation, Lowcountry 9/12 Project of which she is the president owns the website and that an unidentified person controls and maintain the editorial content. Id.  In short, Eiser denies that she did anything which could be part of any alleged infringement.

Alternatively Eiser asserts claims which are applicable (if at all) to other parties or entities and for which she has no standing. She hypothesizes that "Righthaven stands in the shoes of The Denver Post" or Media News Group, its parent organization" from whom Righthaven acquired the copyright by assignment with respect to their acts and conduct; and that she stands in the shoes of the Low Country 9/12 project who performed the copying and posting which is the basis for the infringement claim. Doc. # 53, Para. 7-8. Practically every counterclaim asserts damages for acts which Eiser alleges were performed by some unidentified person on behalf of the Lowcountry 9/12 Project. See Point II below.


**LEGAL ARGUMENT**

## I.   THE SECOND AMENDED ANSWER AND COUNTERCLAIMS VIOLATES FRCP 8(a) AND SHOULD BE DISMISSED


FRCP 8(a) states that "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it; (2) a short and

plain statement of the claim showing that the pleader is entitled to relief." (emphasis added) Righthaven contends that the SAAC consisting of 119 pages so flagrantly violates this rule that the court should dismiss the entire pleading.

At the very start of the SAAC,  Eiser apologizes for  the over length in obvious disregard of FRCP 8(a). Paragraphs 1-3.  Every one of the thirty three separate defenses contains multiple paragraphs explaining the defense. Every one of the twenty three counterclaims contains legal citations and  the SAAC contains over 70 case citations which are unnecessary and are merely argumentative of its claims.  See page 2-3 and fn 1 supra. The SAAC contains numerous references to other Righthaven cases. Paragraphs 64, 94, 108, 205, 206, 595, 596, 711, 719, 788, 794, 819, 915, 916, 951.  The SAAC describes  Righthaven's conduct as  a " massive fraud", Paragraph 98; "worse than a mentally unbalanced person", Paragraph 977; a "reign of terror", Paragraph 527;  "sham proceedings" , Paragraph 694; "atrocious",  paragraph 802;  that everything about it violates public policy, Paragraph 275; that its CEO Steven Gibson has an "ill regulated mind", Paragraph 720; and that one of its in house attorneys is "engaged in the unauthorized practice of law in Nevada",  Paragraph 184, that its former South Carolina attorney conspired to enhance settlements. Paragraph 212.   The SAAC mentions the median salary of a Las Vegas attorney, Paragraph 945, quotes the New York Times, Paragraph 103, the Las Vegas Sun, Paragraph 189, and the movie "Scarface".  Paragraph 795.

In totality, the SAAC contains irrelevant and repetitive paragraphs for the purpose of offering legal argument and polemic statements in violation of the most basic requirements of federal pleading-simplicity. The unnecessary length and verbosity of the SAAC burdens Righthaven with to the duty to isolate the essential claims and it burdens this court with the duty to enforce this rule.

Ample precedent is available to guide this court. The decision in Jacobson v. Schwarzenegger,  226 F.R.D. 395, 396-397 (C.D. Cal. 2005) is highly relevant. United States Magistrate Judge McMahon, on the court's own motion dismissed the First Amended Complaint with leave to amend. After dismissal of its ninety-seven page civil rights Complaint, plaintiff filed a two-hundred page First Amended Civil Rights Complaint accompanied by a separately bound document entitled "Appendix & Exhibits to First Amended Civil Rights Complaint" approximately twice as long as the two-hundred page First Amended Complaint. In dismissing the amended pleading, the court addressed the reasons for adherence to the requirements of Rule 8(a). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."Id at 396.  See Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir.2000). The court found that a licensed attorney was expected to be aware of its provisions.  " When attorneys admitted to practice in Federal courts prepare complaints, neither the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a mélange. It is the duty and responsibility, especially of experienced counsel, to state those essentials in short, plain and nonredundant allegations." Id.  (quoting Silver v. Queen's Hospital, 53 F.R.D. 223, 226-27 (D. Hawaii 1971).  The court found that the First Amended Complaint represented an even more egregious violation of Rule 8(a) than its predecessor consisting of "a rambling diatribe including historical narrative, legal argument, and excerpts from newspaper articles, web sites . . . replete with hyperbole and punctuated by references to the Merchant of Venice, Daniel Webster, Victor Hugo, Scott Peterson and an event

having absolutely nothing to do with this lawsuit." Id at 397.  In dismissing the Amended

Complaint the court said: "Neither the court nor the defendants should be compelled to cull

through pages of rambling narrative, argument and needless digression to discover the factual

bases for the plaintiffs' claims." Id.

Other courts have dismissed pleadings due to over length and irrelevancies.  See Hatch

v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir.), cert. denied, 474 U.S. 1021, 106 S. Ct. 571, 88

L.Ed.2d 555 (1985) (not an abuse of discretion to dismiss complaint which, with attachments,

exceeded  70 pages in length); Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 674 (9th

Cir.1981) (affirming dismissal of amended complaint consisting of 23 pages and 24 pages of

addenda as verbose, confusing and conclusory ); Carrigan v. Calif. State Legislature, 263 F.2d

560, 566-67 (9th Cir.) cert. denied 359 U.S. 980, 79 S. Ct. 901, 3 L.Ed.2d 929 (1959) (complaint

containing 150 pages describing plaintiff's thoughts, worries, hearsay conversations, letters

violated Rule 8(a)).   See also Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 776

(7th Cir.1994) (confusing, redundant and seemingly interminable 119-page complaint an

egregious violation of Rule 8(a)). In McHenry v. Renne, 84 F.3d 1172 (9th Cir.1996), the Ninth

Circuit affirmed a district court's dismissal of a complaint consisting of a " rambling" narrative

containing " immaterial background information," and " storytelling or political griping," in

which each claim for relief incorporated 122 paragraphs of confused factual allegations and then

made  ' perfunctory reference to a legal claim said to arise from these undifferentiated facts.' Id.

at 1176-77. ( quotation omitted)

Another   example of a FRCP 8(a) violation warranting dismissal of the pleading is  In

re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 218 F.R.D. 76, 77-78

(S.D.N.Y. 2003). The Amended Complaint spanned 98 pages and 367 separate paragraphs. The

court found that "the prolix, discursive, redundant, argumentative, and disjointed assertions contained therein are improper. Many of the allegations merely state the conclusions necessary to prevail on the merits and are unsupported by facts . . .  In sum, this Amended Complaint is in need of revision."  See <u>Sefton v. Jew</u>, 204 F.R.D. 104, 105 (W.D. Tex. 2000)(plaintiff's 50-page Complaint and 24-page Response amount to little more than 74 pages of wasted paper)

Irrelevant material is  contrary to Rule 8(a) "which  serves to sharpen the issues to be litigated and to confine discovery ... within reasonable bounds."  <u>Chodos v. F.B.I.</u>, 559 F. Supp. 69, 71 (S.D.N.Y.1982) aff'd 697 F.2d 289 (2d Cir.1982) cert. denied 459 U.S. 1111, 103 S.Ct. 741(1983). The statement [of the claim] should be plain in that it should state facts, not conclusions of fact. <u>Lasky v. Shearson Lehman Brothers Inc.</u>, 139 F.R.D. 597, 598-99 (S.D.N.Y.1991). Otherwise the court cannot determine whether the opposing party must respond. The statement should be short because unnecessary prolixity places an unjustified burden on the court and the responding party. Id. at 598. Each averment should be direct because a complaint's factual allegations should be relevant to the cause of action brought. See <u>Walter Reade's Theatres, Inc. v. Loew's Inc.</u>, 20 F.R.D. 579 (S.D.N.Y.1957) When a complaint is not short and plain, or its averments are not concise and direct, " the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial." <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir.1995).

Based on the foregoing, Righthaven respectfully requests that the court dismiss the SAAC and urges the court in light of the magnitude of the violations  to consider whether not to grant defendant leave to amend.

## II     THE COUNTERCLAIMS ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

Righthaven contends that the twenty three Counterclaims are a "kitchen sink" of disconnected legal theories many of which are facially deficient or do not contain sufficient factual allegations of a claim for relief. See below.  Many of the newly pleaded counterclaims are inconsistent with the factual allegations  in the Answer portion of the SAAC in which  Eiser alleged that  she has not performed any of the acts of alleged infringement and someone else has. She cannot stand in the shoes of Lowcountry 9/12 Project based upon pleading  inconsistent facts, i.e. that the Lowcountry 9/12 Project committed the infringing act. Eiser asserts  that Righthaven is "vicarious liable" for the actions of the Denver Post or Media News Group without any facts upon which to base such theories. Righthaven contends that Eiser has failed to comply with the requirements of FRCP 12(b)(6) and that its counterclaims , as discussed below, should be dismissed.

### A. The standard for motions under Rule 12(b)(6) for failure to state a claim .

In general, when determining a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999) cert. denied  531 U.S. 1052, 121 S. Ct. 657, 148 L.Ed.2d 560 (2000).  However, the Supreme Court has imposed the requirements of FRCP 8(a) upon this standard.  Under FRCP 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Detailed factual allegations are not required.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,  555, 127 S.

Ct. 1955 ( 2007) This Rule calls for sufficient factual matter, accepted as true, to " state a claim to relief that is plausible on its face." Id. at 570, 127 S. Ct. 1955. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S. Ct. 1955. Under Twombly, the principle  that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id. at 555, 127 S. Ct. 1955. Whether a complaint states a plausible claim is  requires the reviewing court to draw on its experience and common sense. Id. at 556, 127 S.Ct. 1955. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937,1941 ___ U.S. ___ (2009). When there are well-pleaded  factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.   Id at 1949 -1951. In other words Eiser must satisfy the court that she nudged her claims "across the line from conceivable to plausible." Id at 1951( quotation omitted).The allegations of the  particular counterclaims and the legal standards applicable thereto are discussed below.

**First Counterclaim- Civil Conspiracy**

Righthaven contends that this counterclaim, paragraphs 507-520, should be dismissed because Eiser has failed to plead special damages related to a civil conspiracy which are different from what has been asserted elsewhere in her other counterclaims. In response to Righthaven's motion to dismiss the Amended Complaint on the basis that it contained only  2 paragraphs with bare legal conclusions, Doc. # 23 at page 17,  Eiser  substantially expanded this counterclaim. However, the new counterclaim for civil conspiracy is still deficient.

In order to recover for civil conspiracy, Eiser must demonstrate that two or more persons combined for the purpose of injuring and causing special damage to her. City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 382 S.C. 535, 546, 677 S.E.2d 574, 579 (2009). To prove special damages, Eiser has to show that the acts in furtherance of the conspiracy were separate and independent from other wrongful acts alleged in the complaint. See Todd v. S.C. Farm Bureau Mut. Ins. Co., 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981). Special damages must be properly pled, or the claim for civil conspiracy will be dismissed. Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 115-16, 682 S.E.2d 871, 875 (Ct. App. 2009). See also FRCP 9(g)(requiring special damages to be specifically stated in the pleadings).

Paragraph 516 states that " the purpose of this combination [ conspiracy] is to extract monies from this defendant and others in settlement of frivolous and fraudulent claims." Paragraph 519 alleges "special harm" but does not specify what damages if any she has sustained. The damages must "go beyond the damages alleged in other causes of action." AJG Holdings LLC v. Dunn, 391 S.C. 463, 706 S.E.2d 23 (S.C. App. 2011). The same allegation, that Righthaven is attempting to obtain settlement of frivolous claims, appears elsewhere in the pleadings. See e.g. Sixth Counterclaim, Lanham Act violations; Eleventh Counterclaim, abuse of process. Defendant admits as much. " As required when a civil conspiracy claim relies on the same basic facts as other causes of action in a complaint, Defendant's civil conspiracy claim is pled strictly as an alternate means of recovery in case Defendant's other theories as to a particular element of damages fail for some reason." Doc. # 62, at page 33, n. 14. Therefore the allegation of a civil conspiracy cannot survive a motion to dismiss because special damages have not been pled with specificity and because the acts in furtherance of the conspiracy and

damages, if any, were the same on which other claims contained elsewhere in the pleadings are based.

   If defendant cannot allege special damages as to a claim for civil conspiracy she is not entitled to proceed under this theory as a matter of law.  This result is based upon the general rule that "conspiracy in and of itself is not a civil wrong." Todd v. South Carolina Farm Bureau Mut. Ins. Co., 276 S.C. 284, 278 S.E.2d 607, 611 (S.C. 1981) In Vaught v. Waites, 300 S.C. 201, 387 S.E.2d 91 (S.C. App. 1989) the Court of Appeals affirmed dismissal of a civil conspiracy count based upon Todd because no special damages were alleged aside from the breach of contract damages. Id at 209.  Since Eiser admits that she has not alleged special damages different from any other cause of action and the counterclaim must be dismissed with prejudice.


**Second Counterclaim- Declaratory Judgment**

   Righthaven contends that this counterclaim, Paragraphs 521-530, is facially defect and must be dismissed. Eiser seeks a declaratory judgment that "Righthaven's business model is illegal, at least in South Carolina." Para 529. Defendant acknowledges that there are no facts alleged in this cause of action on which the court could make such a declaration.

>   "Rather, the new declaratory judgment action seeks a declaration that
>   Righthaven's business model is illegal. Dkt. #53 at 60, ¶ 529 ("Defendant Eiser
>   respectfully requests the Court declare that Righthaven's business model is illegal,
>   at least in South Carolina."). It is true that the next paragraph asks the Court to
>   declare any other matter related to the pleadings and within its discretion, but
>   Defendant's intent with this language was to leave the Court the discretion to find
>   facts and make legal conclusions relating to Righthaven's business operations.
>   Including each and every reason why Righthaven's business model is illegal in the
>   declaratory judgment cause of action would have made a 119 page pleading into a
>   219 page pleading, something Defendant sought to avoid."

Doc. # 62 at page 11.  Defendant plainly admits she intentionally did not submit facts to support an claim for declaratory relief that "Righthaven's business model is illegal".

Although the court will give a liberal view to the pleadings,  the court should not have to examine all of the 119 pages in this pleading to determine whether there are any facts alleged  on which this counterclaim should be sustained or assume that there are some other facts not in the counterclaim on which to support it. FRCP 8(a) requires that the facts be set forth in the particular pleading for which the relief  is requested, i.e. the Second Counterclaim. Since no facts have been alleged as a basis for relief, this cause of action should be dismissed for failure to state a claim.

**Third Counterclaim- Fraud**

Righthaven contends that this counterclaim, Paragraphs 531-563, which  asserts a claim for fraud is deficient because it lacks a factual basis for the relief requested. Paragraphs 540-561 allege that  The Denver Post, the original holder of the copyright  assigned to Righthaven, committed fraud. Paragraph 562 alleges that Righthaven is vicariously liable for The Denver Post's fraud . Vicarious liability must be based upon a principal - agent or employer-employee or similar relationship. See, e.g., Darby v. Furman Co., Inc., 334 S.C. 343, 513 S.E.2d 848 (S.C. 1999). The Third Cause of Action does not assert any facts or allege any basis for the creation of vicarious liability .  Therefore this counterclaim  should be dismissed for failure to state a claim.

**Fourth Counterclaim -  Constructive Fraud**

Righthaven contends that this counterclaim, Paragraphs 564-568,  which asserts a claim for  constructive fraud on the  alternative basis that there was no requisite intent should be dismissed for the same reason as the prior counterclaim.  The counterclaim is deficient because it lacks a factual basis for the relief requested. It does not assert any facts or allege any basis for the

creation of vicarious liability against Righthaven.  Therefore this counterclaim should be dismissed for failure to state a claim.


**Fifth Counterclaim- Negligent Misrepresentation**

Righthaven contends that this counterclaim, Paragraphs 569-577, should be dismissed because it is devoid of facts upon which to base a claim for negligent misrepresentation.  Eiser alleges that The Denver Post was negligent in representations on its website. Paragraph 572. There are no allegations of negligent misrepresentation by Righthaven. There are no allegations of vicarious liability or any basis upon which Righthaven could be vicariously liable for the conduct of The Denver Post. Accordingly, this counterclaim should be dismissed for failure to state a claim.


**Sixth Counterclaim- Lanham Act violation**

Righthaven contends that this counterclaim, Paragraphs 578-607, should be dismissed for failure to state a claim under the Lanham Act Section 43(a)(1).  Eiser  alleges that Righthaven has made false and misleading statements of fact regarding its ownership of the copyright in issue, paragraph 590-591; that newspaper articles and other content are goods, paragraph 587; that Righthaven has made such statements for the purpose of filing lawsuits, which is "commerce" , Paragraph 589; that Righthaven made such statements to Eiser, Paragraph 601; that Eiser was injured thereby, Paragraph 607; that the foregoing is prohibited by the Lanham Act, Section 43(a)(1), subsection (A) and (B). Paragraphs 578.   The Lanham Act 43 (a)(1),  15 U.S.C. 1125 (a) provides:

> "(1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device, or

any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

.  .  .

shall be liable in a civil action by any person who believes that he or she is ... damaged by such act."

Eiser's claims are easily determined by reference to Made in the USA Foundation v. Phillips Foods, Inc., 365 F.3d 278 (4th Cir. 2004). There the court had to decide whether a not for profit organization could assert a claim under Section 43. The court noted that the language "any person who believes that he or she is ... damaged by such act " had to be considered in light of Section 45, 15 U.S.C. 1127, which states: " [t]he intent of [the Act] is ... to protect persons engaged in [congressionally regulated] commerce against unfair competition." Id. at 280. The court said: " At least half of the circuits hold (and none of the others disagree) that the second of these Lanham Act provisions, § 45, or 15 U.S.C. § 1127, bars a consumer from suing under the Act." Id. See Colligan v. Activities Club of New York, 442 F.2d 686, 692 (2d Cir. 1971)( the Act's purpose is to exclusively protect the interests of a purely commercial class against unscrupulous commercial conduct). The Fourth Circuit then dismissed the Lanham Act claim because a nonprofit organization of consumers had no standing under Section 43. Made in the USA Foundation v. Phillips Foods, Inc., 365 F.3d at 281. Other circuits have followed the reasoning of Made in the USA Foundation . See Phoenix of Broward, Inc. v. McDonald's Corp.,

489 F.3d 1156 (11th Cir. 2007)( citing <u>Made in USA</u> with approval ); <u>Stayart v. Yahoo! Inc.,</u> 623

F.3d 436, 438 (7th Cir. 2010)( citing with approval).  Eiser is not engaged in a business but

asserts this claim as a consumer. She admits in her own pleading that the Lanham Act does not

apply to consumers, and she has no standing.  Paragraph 578, fn 1. Lowcountry 9/12 Project is a

not for profit entity , like the plaintiff in <u>Made in the USA Foundation</u>.  According Righthaven

requests that the court dismiss this counterclaim with prejudice for failure to state claim.

**Seventh Counterclaim- Breach of Contract**

Righthaven asserts that this counterclaim, paragraphs 608-630, should be dismissed with

prejudice for failure to state a claim.  Eiser alleges that The Denver Post d/b/a Media News

Group website had a notice prohibiting any commercial use of its articles, Paragraph 621; that

this notice created  the belief that non commercial use of articles was permitted, paragraph 622;

that The Denver Post encourages customers to cut and paste its articles, paragraphs 623-627; and

that this encouragement creates a contractual relationship as to any future use, paragraph 628;

that the Lowcountry 9/12 project went to the website for such purpose, paragraph 613; that

Righthaven breached  the contract between  The Denver Post and Low Country 9/12 project by

filing suit against defendant. Paragraph 628-629. Defendant does not assert any damages.

Righthaven asserts that there is no contract created as a matter of law by the Denver Post

attaching a notice against commercial copying of its contents.  At most, defendant has a defense

to any copyright claim, that the use was non commercial and did not violate the terms of the

notice.  This counterclaim should be dismissed with prejudice.

**Eighth Counterclaim- breach of contract with fraud**

Righthaven asserts that this counterclaim, paragraphs 631-641, should be dismissed with

prejudice for failure to state a claim. Eiser alleges existence of the same contract as in the prior

counterclaim, that The Denver Post lured a third party, not defendant, to cut and paste an article, paragraph 636-637; that Righthaven is the agent of The Denver Post and misrepresented its ownership of the copyright in issue, paragraph 639, with fraudulent intent, paragraph 640. Because of the lack of an enforceable contract, this counterclaim should be dismissed with prejudice.

**Ninth Counterclaim -  breach of duty of good faith**

Righthaven urges the court to dismiss this counterclaim, Paragraph 642-669, with prejudice because Eiser has not and cannot allege facts to establish a cause of action. Eiser alleges that an unidentified agent of the Lowcountry 9/12 Project, acting in the course and scope of that agency relationship, visited The Denver Post website, read the Rosen Letter, and posted it on the Lowcountry 9/12 Project Blog; that  visitors to The Denver Post website are customers of The Denver Post and The Denver Post owes its customers the implied duty of good faith and fair dealing. Para. 647-651. Eiser further alleges that the Denver Post notice prohibiting use of the articles for commercial purposes created the impression that the article could be used for non commercial purposes and that Lowcountry 9/12 Project is a not for profit corporation. Eiser also alleges that after learning that the Lowcountry 9/12 Project blog had posted an article from The Denver Post, instead of operating in good faith and fair dealing by contacting the Lowcountry 9/12 Project and asking that the article be removed, The Denver Post instead arranged for a third party, Righthaven, to sue the President of the Lowcountry 9/12 Project. Para. 660.

In Williams v. Riedman, 339 S.C. 251, 529 S.E.2d 28 (S.C. App. 2000), the Court of Appeals noted that a cause of action for breach of implied covenant of good faith and fair dealing appears only in the insurance arena under a claim for bad faith refusal to pay benefits. See Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 500, 473 S.E.2d 52, 53 (1996);

17

Nichols v. State Farm Mutual Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616 (1983).  The court in
Williams dismissed this claim on the basis that it should only allow recovery of contract
damages.

Righthaven contends that this claim is facially deficient. There is no  contract or legal
basis to impose a duty on The Denver Post against  the persons who  commercially or otherwise
use material from its website. This counterclaim should be dismissed with prejudice.

**Tenth Counterclaim - breach of duty of good faith and fraudulent act**

Righthaven urges the court to dismiss this counterclaim, Paragraph 670-686, with
prejudice because Eiser has not and cannot allege facts to establish a cause of action for breach
of duty of good faith. See above.  Eiser alleges that The Denver Post used software to
surreptitiously insert a code on material copied and pasted from The Denver Post website, Para.
675; that this  the software tricks unknowing users into believing they have done nothing wrong
while simultaneously helping Righthaven sue them later; that this  is a fraudulent act
accompanying Righthaven's breach of the duty of good faith and fair dealing asserted in the
prior counterclaim as Righthaven stands in the shoes of The Denver Post for the purposes of
these claims.  Paragraphs 684-685.  Since the facts alleged in the Ninth Counterclaim  do not
provide any basis for a breach of duty of good faith, the Tenth Counterclaim which relies upon
them is defective  whether or not the acts complained of were fraudulent ( which is denied).
Accordingly  Righthaven requests that this counterclaim  be dismissed with prejudice

**Eleventh Counterclaim- abuse of process**

Righthaven relies upon the arguments in its earlier motion to dismiss this counterclaim.
Doc. # 23 at pages 9 - 11.

**Twelfth Counterclaim- malicious prosecution**

Righthaven asserts that this counterclaim, Paragraphs 702-725, is facially deficient. Eiser alleges "This cause of action is asserted provisionally in the event Righthaven's copyright infringement action against Defendant is terminated in Defendant's favor." Para. 707. However this is improper. "[T]he action or proceeding upon which the case for malicious prosecution is based shall be terminated before any action for malicious prosecution can be commenced; and this reason applies as well where the action is based upon a civil action or proceeding as where it is based upon a criminal prosecution." Tisdale v. Kingman, 34 S.C. 326, 13 S.E. 547, 548 (S.C. 1891). Since the copyright infringement action has not been terminated, this counterclaim should not have been joined and cannot survive since it cannot assert an essential element of the cause of action.

**Thirteenth Counterclaim -Fair Debt Collection Practices Act violation**

Righthaven alleges that this counterclaim, Paragraphs 726-775,  must be dismissed with prejudice because the allegations fail to satisfy the statutory requirements of the Fair Debt Collection Practices Act ( FDCPA). Eiser asserts that "Righthaven's  business is to collect monies from persons it claims infringed on copyrights . . .  and that these alleged infringements occur when a customer of a newspaper visits the newspaper's website and copies material found there."  Para. 734-735. "  Righthaven then claims that copyright infringement has occurred, files a lawsuit against the customer. . .  What Righthaven seeks is to collect on a "debt" as that term is used in the Fair Debt Collection Practices Act." Para. 736-737 .

The FDCPA" defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services of which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Thus, in order for the FDCPA to apply, Eiser must establish that there was a debt and that she is

a consumer under the statute.

In <u>Staub v. Harris</u>, 626 F.2d 275 (3d Cir.1980) the court gave the following

interpretation of a "debt" under the FDCPA. "Specifically it is a transaction in which a consumer

is offered or extended the right to acquire "money, property, insurance, or services" which are

"primarily for household purposes" and to defer payment. "  Since  the obligation at issue was

tax liability  and there was no offer or extension of credit  asserted, the court found that the

complaint failed to state a claim under the FDCPA. Id. at 279.  See <u>Zimmerman v. HBO Affiliate</u>

<u>Group</u>, 834 F.2d 1163, 1169  (3rd Cir. 1987)( transaction leading to a debt under the FDCPA

involves "the offer or extension of credit" to a consumer).

There was no offer or extension of credit in connection with the posting of the Rosen letter

on the  Denver Post website.  Eiser alleges that the copying and posting of the article was done

by an agent of the Lowcountry 9/12 Project,  a not for profit corporation, not a consumer  who

acquired the article for household  or personal use. Clearly the allegations of this counterclaim

involve activity  that does not fall within the scope of the FDCPA. This counterclaim should be

dismissed with prejudice.

**Fourteenth Counterclaim-negligent supervision**

Righthaven contends that this counterclaim, paragraphs 776-783,  is also facially

deficient for failing to plead specific facts on which the claim is based. Eiser alleges that " It

would appear that all the bad conduct engaged in by Righthaven's employees is fully within the

course and scope of their agency relationship with Righthaven. However, in the alternative that

agents of Righthaven are found to have been outside the course and scope of their agency

relationship when doing some or all of the bad acts alleged herein, Defendant Eiser seeks to hold Righthaven liable on theories of negligent supervision, negligent retention, negligent entrustment, and negligent hiring." Para. 781-782.

In order for Righthaven to be liable for any of the foregoing, Eiser had to allege the existence of a duty to her. In <u>Manufacturers and Merchants Mutual Insurance Company v. Harvey</u>, 330 S.C. 152, 498 S.E.2d 222 (Ct.App.1998), the court looked beyond the claim to determine whether the defendant owed any underlying duty to the plaintiff. Id. at 163, 498 S.E.2d at 228. Accord <u>Collins Holding Corp. v. Wausau Underwriters Ins. Co.</u>, 379 S.C. 573, 579, 666 S.E.2d 897, 900 (S.C. 2008). Eiser has failed to allege that she was owed any duty.

In order to establish a claim for negligence, a plaintiff must show: (1) the defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages. <u>Doe v. Marion</u>, 373 S.C. 390,400, 645 S.E.2d 245, 250 (S.C. 2007) . Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger. <u>Faile v. S.C. Dep't of Juvenile Justice</u>, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002). There are five exceptions to this rule: 1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant. Id. Eiser has failed to allege any of the necessary elements or facts to support a cause of action, i.e. the existence of a duty or the exceptions cited above. Accordingly, this counterclaim fails to state a claim under South Carolina law and should be dismissed.

**Fifteenth Counterclaim- intentional infliction of emotional distress**

Righthaven contends that this counterclaim, Paragraphs 784- 807,  is also facially deficient for failing to plead specific facts on which the claim is based. Eiser alleges that " Righthaven files and serves its lawsuits with no warning to its victims nor any attempt to work out a resolution pre-filing. This is done intentionally so as to cause emotional distress as the answer deadline looms, particularly given the fact that most of Righthaven's victims are unable to find or afford counsel in the 30 day answer window." Para. 790-792.   Eiser alleges that Righthaven has no right to sue over the copyrights it sues over, all of its demands are extreme and unsupported by law. Para. 793. Eiser further alleges that "Righthaven associates have, on at least one occasion, employed allusions to physical violence towards its victims . . .  Stephens Media's then CEO, Sherman Frederick, generally threatened potential defendants that he would send his 'little friend called Righthaven' after them. The "little friend" remark is a reference to the famously climactic scene in the movie "Scarface," where drug dealer Tony Montana viciously guns down people raiding his compound with an M-16 rifle equipped with a grenade launcher. Righthaven's attorneys intentionally misrepresent to defendants, particularly unrepresented ones, that settlement negotiations are automatically confidential. Righthaven does this so that its victims will not discuss the matter with family and friends, or will feel inhibited while doing so, so as to keep its victims in an emotionally perturbed state. All of the above-complained of actions were done by Righthaven to Defendant Eiser with the intent to inflict severe emotional distress. Para. 794- 798.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish the following: the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community"; the actions of the defendant caused plaintiff's emotional distress; and  the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." Hansson v. Scalise Builders of S.C., 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).  Eiser admits that "Ordinarily, the service of a summons and complaint and settlement negotiations would not be actionable even if they did induce severe emotional distress, as they often do." Para. 804. The acts complained of  are  not "extreme and outrageous" so as to exceed "all possible bounds of decency"  or "atrocious, and utterly intolerable in a civilized community"   such that "no reasonable man could be expected to endure it". Accordingly, the court should dismiss this counterclaim as facially inadequate to support a cause of action for intentional infliction of emotional distress.

**Sixteenth Counterclaim- anti-cyber squatting**

Righthaven contends that this counterclaim,  Paragraphs 808-840, should be dismissed because its fails  to state a claim under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) which states:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person- (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that-
> . . .
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

 Cybersquatting " occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the

23

domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." <u>Bosley Med. Inst., Inc. v. Kremer</u>, 403 F.3d 672, 680 (9th Cir.2005)( quotation omitted). Eiser alleges that the Lowcountry 9/12 Project's website is a domain name constituting a "mark". Paragraph 816. This allegation is an obvious attempt to avoid the need to establish that there was a separate mark used in commerce with which the domain name could be confused. Eiser does not allege that the domain name was used in commerce as being identical with the name of the not for profit entity, Lowcountry 9/12 Project.  However, even if the website can be considered as a "mark" ( which is denied),  Eiser has not satisfied  the requirement of being the "owner of the mark" since she alleges only that she is president.  In addition, Eiser admits that Righthaven did not gain control of the domain name. Paragraph 827, and Righthaven has abandoned its request for transfer. See Doc. # 36 at pages 5-6. The statute does not apply here since it does not prohibit attempts to traffic. Eiser admits that Righthaven never controlled the domain name and thus could not traffic in it. Accordingly, Righthaven requests that this counterclaim be dismissed with prejudice.

### Seventeenth Counterclaim- S.C. Unfair Trade Practice Act violation

Righthaven relies upon the arguments in its earlier motion to dismiss this counterclaim. Doc. # 23 at pages 11-14.

### Eighteenth Counterclaim- defamation

Righthaven request that this counterclaim ( Paragraphs 863-897) be dismissed with prejudice  on the face of the pleading. The defamation claim is based upon a interview given by Steven Gibson, Righthaven's CEO to CNN. Paragraph 867. The alleged defamatory statement is that   " The infringement community that was caught . . .  not obeying the law . . .  is a

24

community of thieves." Paragraph 870.   Eiser then alleges that Eiser was widely known as a

Righthaven defendant at the time of the publication.  Paragraph 871. Eiser  blames Gibson for

the publication of the alleged defamation. Paragraph 876. These allegations are not legally

sufficient to satisfy the standards for defamation in South Carolina. See Parrish v. Allison, 376

S.C. 308, 656 S.E.2d 382 (S.C. App. 2007).

      The tort of defamation allows a plaintiff to recover for injury to his or her reputation as

the result of the defendant's communications to others of a false message about the plaintiff.

Swinton Creek Nursery v. Edisto Farm Credit, ACA, 334 S.C. 469, 484, 514 S.E.2d 126, 133

(1999). "A communication is defamatory if it tends to harm the reputation of another as to lower

him in the estimation of the community or to deter third persons from associating with him."

Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. at 530, 506 S.E.2d 497, 513 (1998). The

trial court must initially determine if the communication is reasonably capable of conveying a

defamatory meaning. Id.; White v. Wilkerson, 328 S.C. 179, 183, 493 S.E.2d 345, 347 (1997)

The Gibson statement does not identify Eiser as someone  " caught violating the law" so that the

statement fails to satisfy the element of defamation that it is "about the plaintiff."  Eiser tries to

overcome this defect by asserting that it was well known that she was a named defendant at the

time of the statement. If the defamatory meaning is not clear unless the hearer knows the facts or

circumstances not contained in the statement itself, then the statement is defamatory *per quod*. In

cases involving defamation *per quod,* the plaintiff must introduce facts extrinsic to the statement

itself in order to prove a defamatory meaning. Holtzscheiter, 332 S.C. at 530, 506 S.E.2d at 513.

However, there was nothing but an allegation of infringement pending against her.  The

existence of pending litigation  does not satisfy the requirement that  the statement cause injury

to the plaintiff in her trade or profession. If the publication is not libelous per se, bad motive or

malicious purpose to injure the plaintiff is not enough without an allegation that it effected the evil purpose by conveying to those to whom it was sent a charge injuriously affecting the character or business of the plaintiff. Hubbard v. Furman University, 76 S.C. 510, 57 S.E. 478, 479 (S.C. 1907)( dismissing complaint because there was no allegation that on account of certain peculiar circumstances they were understood by those to whom they were sent as charging the plaintiff with incompetency or negligence or moral delinquency.)

Righthaven contends that when considering the statement in the context in which Eiser asserts it should be understood, it could not reasonably be interpreted as stating false statements with a defamatory meaning of and concerning Eiser.  Some statements are so clearly innocent or not defamatory  that the court is justified in determining the question itself. Righthaven contends that the court should dismiss  the counterclaim with prejudice because the statement as alleged under the circumstances  as alleged does not rise to the level of defamation.

**Nineteenth Counterclaim- Sherman Act violations**

Righthaven alleges that this counterclaim (paragraphs 880-929) is lacking in the elements of a cause of action for a violation of the Sherman Act, 15 USC Section 1 and 2.  Eiser has failed to specifically allege  a conspiracy between competitors which has the ability to restrain trade in a relevant market.   Section 1 of the Sherman Act prohibits "[e]very con- tract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. The Supreme Court has never "taken a literal approach to [its] language. " Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006). The Court has repeatedly stated that Section 1 "out-law[s] only unreasonable restraints." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997).Whether a practice restrains trade in violation of Section 1  is evaluated  under a  " rule of reason."  See Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007). "In

its design and function the rule [of reason] distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." Id. at 886.

Plaintiffs must plead facts which, if true, will prove "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008).  In order to establish the third element, plaintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves. McGlinchy v. Shell Chem. Co., 845 F.2d 802, 811 (9th Cir. 1988). Plaintiff must also plead facts that if taken as true would allow plaintiffs to recover for an antitrust injury, which is to say "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1102 (9th Cir. 1999). " In order successfully to allege injury to competition, a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably." Lee Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 507-08 (9th Cir. 1989). Rather, a claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail. See Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987).

To obtain relief  under Sections 1 and 2 of the Sherman Act, the  plaintiff  must plead a relevant product market  which is affected by the alleged anticompetitive conduct. See Allied Orthopedic Appliances Inc. v. Tyco Health Care Group, LP, 592 F.3d 991, 996, 998 (9th Cir. 2010). A properly defined product market "includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand."  Oltz v. St. Peter's

27

Community Hosp., 861 F.2d 1440, 1446 (9th Cir. 1988). An antitrust complaint can be dismissed if its market definition is "facially unsustainable."Newcal Industries v. Ikon Office Solutions, 513 F.3d 1038, 1045 (9th Cir. 2008). Market definition must "encompass the product at issue as well as all economic substitutes for the product." Id. A complaint which does not consider these as well will be dismissed. Colonial Medical Group, Inc. v. Catholic Health Care West, 10-16490 (FED9) ( Attachment A) .

With respect to the   first element of a conspiracy, Eiser alleges that Stephens media controls 64 newspapers, Paragraph 896;  that Media News Group owns 75 newspapers, paragraph 898; that Stephens Media arranged for financing Righthaven, Paragraph 894 ; that Righthaven is engaged in a conspiracy to choke off competition, Paragraph 904, by filing baseless cases. Paragraph 912. This conclusory statement of a conspiracy  is insufficient to satisfy  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955 ( 2007):  " we hold that stating such a [Section 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Id. Righthaven contends that Eiser has failed to  provide enough factual basis upon which a plausible claim for conspiracy could be made.

With respect to the second element restraint of trade in commerce required under Section 1 and 2, , Eiser has  failed to identify a relevant market.  Newspaper articles s are not "relevant market " because market definition must "encompass the product at issue as well as all economic substitutes for the product." Newcal Industries v. Ikon Office Solutions, 513 F.3d 1038, 1045 (9th Cir. 2008).

With respect to the third element, injury to competition, none is alleged. There is a vague statement concerning choking off competition by the "small time bloggers" . Paragraph 900. At best this must be considered as conclusory statement . " The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937,1949, ___ U.S. ___ (2009).

Righthaven asserts that this counterclaim is facially deficient under the applicable standards for violations of Sherman Act Section 1 and 2 and should be dismissed for failure to state a claim.

**Twentieth Counterclaim - civil RICO**

Righthaven contends that this counterclaim, Paragraphs 927-938, should be dismissed for failure to state a claim under 18 U.S.C. 1962(c). Eiser alleges that those [ unnamed] connected with Righthaven formed an enterprise, Paragraph 930; that Righthaven engaged in a scheme to extort and defraud through false pretenses and extortion. Paragraph 933, used the mails, Paragraph 934, that the extortion and fraudulent conduct constituted a predicate act, Paragraph 935, which damaged Righthaven's targets by forcing them to pay underserved settlements or to retain lawyers. Paragraph 937.

A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479,496, 105 S.Ct. 3275 (1985). The plaintiff must allege each of these elements to state a claim. Id."The crime defined in 18 U.S.C. § 1962(c) involves two modes of association with an enterprise. In order to violate the provision, an individual must be 'employed by or associated with' an enterprise and must 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity.' Construing the statute to give effect to all its words, it requires an association with an enterprise which is distinct from participation in the conduct of the enterprise through a pattern of racketeering activity." United States v. Bledsoe, 674 F.2d 647, 663 (8th Cir. 1982). " [U]nder RICO, an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts. Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself. Thus unless the inclusion of the enterprise element requires proof of some structure separate from the racketeering activity and distinct from the organization which is a necessary incident to the racketeering, the Act simply punishes the commission of two of the specified crimes within a 10-year period. Congress clearly did not intend such an application of the Act." Id at 664.

Eiser have failed to meet the statutory definition of an enterprise since she does not allege conduct of an enterprise apart from  Righthaven's  alleged racketeering activity. "Conducting an enterprise that affects interstate commerce is obviously not, in itself, a violation of § 1962, nor is mere commission of the predicate offenses. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479,496, 105 S.Ct. 3275 (1985).

Eiser has failed to allege damages as result of the predicate acts of racketeering activities. Eiser  has standing if, and can only recover to the extent that, she has been injured in her business or property by the conduct constituting the violation. Id. "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." Haroco, Inc. v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (1984) aff'd  473 U.S. 606 ( 1885).

" Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479,496, 105 S.Ct. 3275 (1985).

Therefore, Righthaven contends that this counterclaim should be dismissed for failure to assert the necessary elements of a claim under 18 U.S.C. 1962(c).

**Twenty First Counterclaim - piercing the corporate veil**

Righthaven asserts that this counterclaim , Paragraphs 939-965, fails to allege the necessary elements of a cause of action for piercing the corporate veil under established South Carolina law. See, e.g. Mid-South Mgt. Co. Inc. v. Sherwood Development Corp., 374 S.C. 588, 649 S.E.2d 135 (S.C. App. 2007). The South Carolina Supreme Court  has approved the filing of a veil piercing claim  against a corporate entity as part of an initial suit and before judgment has been entered. Drury Development Corp. v. Foundation Ins. Co., 380 S.C. 97, 668 S.E.2d 798, 801 (S.C. 2008). However, the court noted: " so long as the plaintiff has pled facts sufficient to survive a motion to dismiss as to the corporate liability claims and the alter ego claim, the trial court should move forward to determination of both matters." Id at  802. Our courts have outlined a two-prong test to determine whether a corporate veil should be pierced. The first part of the test requires an eight-factor analysis and looks to observance of the corporate formalities by the dominant shareholders. Sturkie v. Sifly, 280 S.C. 453, 457-458, 313 S.E.2d 316, 318 (Ct.App.1984)  In determining whether the corporate formalities were observed under the first prong of the Sturkie test, the courts consider eight factors: (1) whether the corporation was grossly undercapitalized;  (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time;  (5) siphoning of funds of the

31

corporation by the dominant stockholder;  (6) non-functioning of other officers or directors;  (7) absence of corporate records; and  (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder. <u>Dumas v. InfoSafe Corp</u>., 320 S.C. 188, 192, 463 S.E.2d 641, 643 (Ct.App.1995) .The conclusion to disregard the corporate entity must involve a number of the eight factors, but need not involve them all." Id.

The counterclaim alleges only one of the Sturkie factors-undercapitalization, but none of the others. The 46 paragraphs are almost entirely devoted to speculation about Righthaven's financial status, Paragraph 943-948, 954-955 and  disparagement , Paragraph 950-964. The most generous interpretation of these allegations is that they are intended to satisfy the second prong of the Sturkie test. Under the second prong of the <u>Sturkie</u> test, the party seeking to pierce the corporate veil must prove injustice or fundamental unfairness if the corporate veil is not pierced. <u>Multimedia Publishing of S.C., Inc. v. Mullin</u>s, 314 S.C. 551, 553, 431 S.E.2d 569, 571 (1993) . However, Eiser's pleading is facially deficient for  failure to allege the necessary elements of a cause of action for piercing the corporate veil. Therefore, the court should dismiss this claim.

**Twenty Second Counterclaim- permanent injunction**

Righthaven alleges that this counterclaim, Paragraph 966-979, should be dismissed because it lack sufficient factual allegations to state a cause of action. The counterclaim requests that the court  prohibit Righthaven from operating in South Carolina or  [filing] lawsuits without preclearance from the court. Paragraph. 968.  The remainder of the counterclaim asserts the inadequacy of  monetary damages and that this relief will serve the public interest. Paragraphs 969- 975.  A permanent injunction is a remedy not a cause of action and this counterclaim does not contain any simple allegation of a claim for relief .

**Twenty Third Counterclaim - indemnification**

Righthaven requests that the Court dismiss this counterclaim (paragraphs 980-990) with prejudice because Eiser has not and cannot allege the necessary elements of a cause of action. Eiser seeks equitable indemnification for plaintiff to pay all of defendant's expenses in defending this action. Paragraph 990. Eiser misconstrues the concept of indemnification which is not applicable to these circumstances. Indemnity may be defined as a "form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." First Gen. Servs. of Charleston, Inc. v. Miller, 314 S.C. 439, 442, 445 S.E.2d 446, 449 (1994) (quoting Town of Winnsboro v. Wiedeman-Singleton, Inc., 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), aff'd, 307 S.C. 128, 414 S.E.2d 118 (1992)). A plaintiff may maintain an equitable indemnification action if he was compelled to pay damages because of negligence imputed to him as the result of another's tortious act. Fowler v. Hunter, 388 S.C. 355, 697 S.E.2d 531, 535 (S.C. 2010). A plaintiff asserting an equitable indemnification cause of action may recover damages if he proves: (1) the indemnitor was liable for causing the plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the plaintiff's claims against it, which were eventually proven to be the fault of the indemnitor. Id.

Eiser has not and cannot allege that she was obligated to pay a third party who has asserted a claim against her for some tortious or other conduct which was due to the actions of Righthaven. The circumstances under which equitable indemnity would apply are not present here as Eiser's claim for damages plainly establishes.

Next, the right to indemnity arises by operation of law whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the

other, as where one person is exposed to liability by the wrongful act of another in which he does

not join. ). **"** Equitable indemnity. . . is based upon the specific relation of the indemnitee to the

indemnitor in dealing with a third party. " Rock Hill Telephone Co., Inc. v. Globe

Communications, Inc., 363 S.C. 385, 611 S.E.2d 235,237 (S.C. 2005) Contrary to Eiser's

assertion that " there are no hard and fast rules as to the nature of the relationship. . . that will

give rise to equitable indemnification", paragraph 982, the  South Carolina courts have provided

guidance and none of it supports this counterclaim. See, e.g. Town of Winnsboro v. Wiedeman-

Singleton, Inc., 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), aff'd, 307 S.C. 128, 414 S.E.2d 118

(1992)( the relationship between a contractor and a subcontractor supports a claim for equitable

indemnification); Stuck v. Pioneer Logging Mach., Inc., 279 S.C. 22, 24, 301 S.E.2d 552, 553

(1983) (purchaser of defective vehicle entitled to indemnification form seller.  Eiser cannot

establish any " special relationship" between her and Righthaven such that a necessary element

of a claim for equitable indemnification is absent. Accordingly, Righthaven requests this

counterclaim be dismissed with prejudice.


### CONCLUSION

For the reasons expressed above, Righthaven requests that the court dismiss the pleading

it its entirety due to failure to abide by FRCP 8(a) and the counterclaims cited  above that  do not

contain the necessary elements for a prima facie case. Finally Righthaven requests that  the

following counterclaims be dismissed  with prejudice:  Sixth – Lanham Act violations; Seventh -

breach of contract; Eight - breach of contract with fraud; Ninth - breach of duty of good faith;

Tenth- breach of duty of good faith with fraud; Thirteenth - Fair Debt Collections Practices Act

violations;  Sixteenth - Anticybersquatting  Consumer Protection Act violation ; Eighteenth -

defamation; and Twenty Third - indemnification. These counterclaims  as alleged do not meet the legal standards for a cause of action.

Respectfully submitted,

 s/ Edward A. Bertele/
    Edward A. Bertele
    Fed. ID. No. 10293
    1812 Pierce Street
    Charleston, SC 29492
    (843) 471-2082 phone
    (843) 471-2082 fax
    ebertele@msn.com
    Attorney for Plaintiff Righthaven LLC

August 25, 2011